**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| EDUARDO PAUL CUSTODIO, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )    Case No. 4:15-CV-01162 JAR |
| | ) |
| CECILIA MARIANELA TORRES SAMILLAN, | ) |
| | ) |
|     Respondent. | ) |
| | ) |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

This action has been brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, October 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 22514 (the "Hague Convention"). The Hague Convention seeks to "protect children internationally from the harmful effects of their wrongful removal or retention" caused either by the removal of a child from the state of its habitual residence or the refusal to return a child to the state of its habitual residence. Hague Convention Preamble; see Barzilay v. Barzilay, 536 F.3d 844, 846 (8th Cir. 2008). The principal objectives of the Hague Convention are "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention art. 1; see also Silverman v. Silverman, 338 F.3d 886, 897 (8th Cir. 2003). The Hague Convention is implemented in the United States by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11610 (1988). Chafin v. Chafin, 133 S. Ct. 1017, 1021 (2013). See also Abbott v. Abbott, 560 U.S. 1, 9 (2010); Barzilay, 536 F.3d at 846.

## I. BACKGROUND

Petitioner filed his Complaint for Return of Child on July 28, 2015 (Doc. No. 1) and a First Amended Complaint on August 7, 2015. (Doc. No. 5) On August 10, 2015, the Court issued an Order to Show Cause regarding the First Amended Complaint and set the matter for hearing on August 25, 2015. (Doc. No. 7) Respondent filed a pro se response letter on August 25, 2015 which the Court has construed as an Answer. (Doc. No. 9) Petitioner appeared for the show cause hearing through counsel; Respondent appeared pro se with the children named in the complaint. Respondent spoke very limited English. At that time, the Court scheduled a hearing on Petitioner's complaint for September 10, 2015.

On September 10, 2015, Respondent again appeared pro se and was assisted by an interpreter appointed by the Court. Respondent indicated that she could not afford to pay for an attorney but was ready to proceed. The Court heard arguments from both sides and admitted certain of Petitioner's exhibits into evidence. After Petitioner rested his case, Respondent orally requested a continuance for a number of reasons which the Court determined were good cause. Over Petitioner's objection, the Court granted Respondent a continuance to allow her additional time to seek counsel and set the matter for hearing on September 24, 2015.

On September 24, 2015, Respondent again appeared pro se, indicating she had been unable to retain counsel. Additional evidence was presented and the Court, with consent of the parties, interviewed the children on the record in chambers outside the presence of the parties and counsel. The matter was taken under submission and the parties granted until October 2, 2015 to file their written submissions in support of and in opposition to Petitioner's Amended Complaint. The Court scheduled a hearing on October 8, 2015. (Doc. No. 17) Both parties filed their submissions on October 2, 2015. (Doc. Nos. 20, 21, 22)

Upon determining the ability of the children to testify in open court, the Court allowed counsel to examine the children at the October 8, 2015 hearing. At the end of this proceeding, and with the agreement of the parties, the Court continued the case for one week to give the parties an opportunity to discuss a resolution and ordered a status report, due October 16, 2015. (Doc. No. 26) After being advised that the parties engaged in settlement discussions and that progress was made but no settlement reached, the Court appointed limited scope counsel for Respondent to facilitate further discussions and ordered the parties to update their status report by November 3, 2015. (Doc. No. 29) On November 3, 2015, the parties advised the Court that a settlement had not been reached. (Doc. Nos. 31, 33) Respondent requested additional time to continue to explore settlement and the Court granted the parties one final extension of seven days to continue their discussions. (Doc. No. 34) When the parties reached an impasse, counsel for Respondent agreed to represent Respondent pro bono and filed a general appearance on her behalf. (Doc. No. 36)

Respondent then sought leave to amend her answer pursuant to Federal Rule of Civil Procedure 15(a) and file a memorandum in opposition to Petitioner's amended complaint for return of child. The Court permitted Respondent to file a post-trial memorandum but deferred ruling on her motion for leave to file an amended answer pending review of her proposed amendment. (Doc. No. 42) Petitioner opposes Respondent's proposed amended answer because it contains new affirmative defenses that were not tried by express or implied consent. (Doc. No. 45) Specifically, Respondent states that Petitioner fails to state a claim, does not have custody rights, and would not have exercised his rights but for any removal. In addition, Respondent states the children were habitual residents of the United States immediately before the wrongful removal or retention, and are now settled in their new environment. (Doc. No. 43 at 5, ¶¶ 1-6)

Leave to file an amendment after trial may be granted under two conditions: 1) after a party has made an objection to evidence that is not within the issues raised in the pleading; or 2) after an issue has been tried by express or implied consent. Fed. R. Civ. P. 15(b)(1), (2). The Court previously found the first condition inapplicable because neither party objected to evidence not within the issues raised in the pleadings. After reviewing Respondent's Amended Answer, the Court finds the second condition likewise inapplicable because Petitioner never explicitly consented to try any of these issues and Respondent does not claim that any of these issues were tried by implied consent. Thus, there is no basis for amendment under Rule 15(b). Moreover, the Court has liberally construed Respondent's pro se filing in response to Petitioner's amended complaint, and taken evidence on the mature child affirmative defense. Respondent's motion for leave to file an amended answer will, therefore, be denied.

The Court has carefully considered all of the evidence submitted and the parties' post-trial memoranda. The matter is now ready for disposition.

## II. FINDINGS OF FACT

Petitioner is a Peruvian citizen and currently resides in Chiclayo Lambayeque in Northern Peru. Petitioner and Respondent are the parents of two sons, M., born March 25, 2000 and G., born May 4, 2001. The parties were married in December of 2002. Respondent separated from Petitioner in May 2004. The parties legally separated in September 2011. The Separation Order provided that both parents would retain "parental authority," while Respondent would be "responsible for [the children's] care and protection." Petitioner was granted visitation rights during the month of September and from December 15 until January 15, provided Petitioner brought the children to Respondent for Christmas and New Year's Day. Petitioner was also permitted to visit the children at other times during the year after coordinating with Respondent.

The parties were divorced on January 16, 2012. Following the divorce Petitioner exercised his visitation rights on at least ten occasions.

In January 2014, Respondent sought permission from the Peruvian court to take the children to St. Louis, Missouri, to seek medical treatment for M.'s serious eye condition, progressive keratoconus,[1] and for vacation for G. Petitioner did not oppose the request in writing. The court granted Respondent's request, provided she return to Peru with the children no later than March 24, 2014.

In February 2014, Respondent married Robert Ferris, Jr., an American citizen and resident of St. Louis, Missouri, and is now a legal permanent resident. Respondent and her husband have a young baby with significant medical issues.

Respondent did not return M. and G. by March 24, 2014 and on July 23, 2014, petitioned the Peruvian court for an 18-month extension of the travel authorization. The court denied her request for an extension on September 11, 2014. Respondent appealed the decision but the denial was affirmed on December 17, 2014. The court subsequently ordered Respondent to return the children to Peru on four separate occasions.

On February 5, 2015, Petitioner filed a complaint with the Peruvian Ministry of Women and Vulnerable Populations, seeking the international return of the children. Petitioner filed his Complaint for Return of Child on July 28, 2015 and a First Amended Complaint on August 7, 2015.

---

[1] Keratoconus is a vision disorder that occurs when the normally round cornea (the front part of the eye) becomes thin and irregular (cone) shaped. This abnormal shape prevents the light entering the eye from being focused correctly on the retina and causes distortion of vision. Treatment options range from specialized rigid contact lenses to corneal transplants. www.aoa.org/patients-and-public (last visited December 15, 2015).

5

## III. CONCLUSIONS OF LAW

The United States and Peru are both signatories to the Hague Convention.[2] As noted by the Eighth Circuit, "[t]he key inquiry under the Convention is whether a child has been wrongfully removed from the country of its habitual residence or wrongfully retained in a country other than that of its habitual residence." Barzilay, 536 F.3d at 846. The removal or retention of a child is considered to be "wrongful" when it is in breach of the custody rights of another person and when those custodial rights were actually being exercised at the time of the removal, or would have been exercised but for the removal. Sita-Mambwene v. Keeton, No. 4:09CV00913 ERW, 2009 WL 2836430, at *1 (E.D. Mo. Aug. 28, 2009). Article 5(a) of the Hague Convention broadly states that "rights of custody" are "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence."[3]

To establish a prima facie case for return under the Convention, the petitioner must show, by a preponderance of the evidence, that: (1) prior to removal or wrongful retention, the child was habitually resident in a foreign country; (2) the removal or retention was in breach of custody rights under the foreign country's law; and (3) the petitioner was exercising custody rights at the time of the removal or wrongful retention. Hague Convention, art. 3; 42 U.S.C. § 11603(e); Barzilay, 536 F.3d at 847; Rydder v. Rydder, 49 F.3d 369, 372 (8th Cir. 1995).

Here, the Court concludes that Petitioner has met his burden of showing by a preponderance of the evidence that M. and G. were habitually resident in Peru at the time of

---

[2] See U.S. Hague Convention Treaty Partners, www.travel.state.gov (last visited Dec. 9, 2015).

[3] The Convention distinguishes between "rights of custody" and "rights of access." Hague Convention, art. 5. Rights of custody are assigned greater protection under the Convention than rights of access; the Convention provides for the return of the child to his or her habitual residence in cases involving rights of custody, but in cases involving rights of access, the Convention only requires a country to take "steps to remove, as far as possible, all obstacles to the exercise of such rights." Id., arts. 12, 21.

removal.[4] The boys were born in Peru and never lived anywhere other than Peru until Respondent removed them to the United States in 2014. The Court also concludes that the continued retention of the children in the United States was in breach of Petitioner's custody or access rights under Peruvian law and that Petitioner was exercising those rights, albeit sporadically, at the time of retention.

Once a petitioner establishes a prima facie case for the return of the child, the court must order the return unless the respondent can rebut that prima facie case or establish one of the affirmative defenses provided under the Hague Convention. Rydder, 49 F.3d at 372; Sita-Mambwene, 2009 WL 2836430 at *4. The Hague Convention establishes a number of affirmative defenses that may be advanced in opposition to a Hague petition. Hague Convention, arts. 12, 13, 20. Here, Respondent has raised the mature child defense under Article 13 of the Convention. A court is not required to order the return of a child if the child objects to the return and is of sufficient age and maturity to make such a decision. Chafin, 133 S. Ct. 1021. The mature child defense must be proven by a preponderance of the evidence, 42 U.S.C. § 11603(e)(2)(B), "[h]owever, a 'court must apply a stricter standard in considering a child's wishes when those wishes are the sole reason underlying a repatriation decision and not part of some broader analysis' …" Tsai-Ya Yang v. Fu-Chiang Tsui, 499 F.3d 259, 278 (3rd Cir. 2007) (citing de Silva v. Pitts, 481 F.3d 1279, 1286 (10th Cir. 2007)).

Although the Eighth Circuit has not specifically considered the mature child defense in a majority opinion, many other courts have applied the mature child defense in cases brought under the Hague Convention. See Tsai-Ya, 499 F.3d 259 (determined that the "child's wishes

---

[4] In her post-trial memorandum, Respondent contends that M. and G.'s habitual residence had shifted to the United States at the time of removal. Because the Court has ruled herein that there is no basis for Respondent's proposed amendment asserting this affirmative defense, the Court need not consider it.

can be the sole reason that a court refuses to order the return of the child to his or her habitual residence."); de Silva, 481 F.3d at 1286 ("a court may appropriately decide not to return a child … when a child of sufficient age and maturity objects to being returned to the country of habitual residence."); Blondin v. Dubois, 238 F.3d 153, 166 (2nd Cir. 2001) ("a court may refuse repatriation *solely* on the basis of a considered objection to returning by a sufficiently mature child") (italics in original).

An analysis of whether to apply the mature child defense requires consideration of the goals of the Hague Convention and a determination of whether the child is of sufficient age and maturity for his or her views to be taken into account. Tsai-Yi, 499 F.3d at 279 (citing Blondin, 189 F.3d at 247). The Convention does not establish a minimum age at which a child is to be considered sufficiently mature under the Convention. Such a determination must be made on a case-by-case basis. Id. Here, M. is 15-years old and will turn 16 on March 25, 2016; G. is 14-years old and will turn 16 on May 4, 2017. Courts have frequently applied the mature child defense to children in this general age range. See, e.g., de Silva, 481 F.3d at 1286-87 & fn. 7 (exception applied to 13-year old); Man v. Cummings, 2008 WL 803005, at *2, *4 (D. Or. March 21, 2008) (same); Kofler v. Kofler, 2007 WL 2081712, at *10 (W.D. Ark. 2007) (finding children aged 11, 13, and 15 were sufficiently mature to voice their objections); McManus v. McManus, 354 F. Supp. 2d 62, 71 (D. Mass. 2005) (exception applied to 15-year old twins); and Diaz Arboleda v. Arenas, 311 F. Supp. 2d 336, 343 (E.D. N.Y. 2004) (exception applied to 12-year old and 14-year old). Moreover, "the authoritative commentary to the Convention suggests that children who are nearing 16 years should ordinarily have their own wishes respected." McManus, 354 F. Supp. 2d at 71 (citing Elisa Pérez-Vera, Explanatory Report on the 1980 Child Abduction Convention, ¶ 30, at 433, in 3 Hague Conference on Private Int'l Law, Acts and

Documents of the Fourteenth Session (1980), available at http://hcch.e-vision.nl/index_en.php?act=publications.details & pid=2779) ("[T]he fact must be acknowledged that it would be very difficult to accept that a child of, for example, fifteen years of age, should be returned against its will.").

In determining whether to apply the mature child defense, the court should also consider whether a child's desire to remain or return to a place is "the product of undue influence," in which case the "child's wishes" should not be considered. Tsai-Yi, 499 F.3d at 279 (citing de Silva, 481 F.3d at 1286 and Hague Convention Analysis, 51 Fed.Reg. at 10,509 ("A child's objection to being returned may be accorded little if any weight if the court believes that the child's preference is the product of the abductor parent's undue influence over the child."). Petitioner argues that Respondent's mature child defense must be disregarded because M. and G.'s testimony is a product of her undue influence. (Doc. No. 21 at ¶¶ 11-18) In particular, Petitioner points to M.'s testimony regarding Petitioner's financial resources and alleged physical abuse and both boys' misrepresentations to the Peruvian court in their application for travel authorization that they did not want to live in the United States. Petitioner further argues that M. and G.'s expressed desire not to return to their father is a custody consideration and irrelevant to the application of the mature child defense. (Doc. No. 21 at ¶¶ 19-23)

The Court has had several opportunities to observe M. and G., who were present with Respondent at every scheduled hearing. The Court was impressed by their behavior and their desire to express their views and have them considered by the Court. It was clearly evident that they understood the purpose and significance of these proceedings.

The Court interviewed M. and G. separately, in chambers with an interpreter and court reporter present, but outside the presence of the parties and counsel. The Court expressed its

intent to have them speak freely about the matters they wished the Court to consider. M. stated that he wishes to stay with his mother and does not want to return to Peru, due to his poor relationship with his father and his father's family. He continues to receive medical treatment for his eye condition and has better relations with his classmates here than he did in Peru. G. also stated that he wishes to remain in St. Louis rather than return to Peru, as he feels very happy here with his mother and step-father and does not feel safe with his father. He indicated that he has many friends at school and wishes to complete his studies in the United States. The Court observed both M. and G. to be very thoughtful and intelligent young men.

Upon examination by Petitioner's counsel in open court, M. talked about the opportunities he has now that he is in the United States. Both M. and G. said the schools were better in the United States than in Peru. They like their school, are good students, and have friends. By contrast, M. and G. testified they had no real friends in Peru. Further, both M. and G. stated they wish to remain in the United States with Respondent, their step-father Mr. Ferris, and their baby brother.

The Court observed the demeanor of M. and G. during their in camera interviews and in open court. Their testimony appeared to represent their genuine thoughts and feelings and there was no indication that they had been coached or otherwise unduly influenced by Respondent. C.f., In re Robinson, 983 F. Supp. 1339, 1344 (D. Colo.1997), where the court concluded that an 11-year-old child's causal reference to being "settled" (a legal term under the Convention), in response to questions from the court, evidenced undue influence. Even if there was some indication that M. and G. had a skewed perception of Petitioner, the Court is not convinced that this rose to the level of undue influence such that their objections should not be considered. As for M. and G.'s statement to the Peruvian court that they did not want to live in the United States,

10

M. explained it was his idea to make this statement to the Court so that Petitioner would give them permission to travel and because they did not know what life would be like in the United States.

Furthermore, M. and G.'s preference not to return to their father is not the only reason they wish to stay in the United States. The Court has considered all of the boys' reasons for objecting to a return to Peru, including that they have a close relationship with their mother, that they have a poor relationship with their father and feel unsafe, that they now have a new younger brother living with them, and that they enjoy their school and friends in the United States. Both M. and G. want to take advantage of the educational opportunities here. M. also wants to continue his medical treatment here for his serious eye condition, which is being paid for by the local Lions Club, a service organization.

In sum, after observing the demeanor of both M. and G. and hearing their opinions, the Court finds, by a preponderance of the evidence, that M., at age 15 ½, and G., at age 14 ½, have attained an age and degree of maturity such that it is appropriate for the Court to consider their views, and specifically their objection to returning to Peru. The Court further finds that neither M. nor G. was subjected to undue influence by Respondent. For this reason, the Court concludes that denial of the petition for return is warranted based on the mature child affirmative defense.

Petitioner states in his post-hearing submission that he is not seeking custody of M. and G., but merely their return to Peru so that he can exercise his lawful rights of visitation. (Doc. No. 21 at ¶ 22) As noted above, the Convention recognizes "rights of access," but offers no return remedy for a breach of those rights. Hague Convention, arts. 5(b), 21; Abbott, 560 U.S. 1 at 9. Thus, the relief sought by Petitioner may not even be cognizable in this Court. See Cantor v. Cohen, 442 F.3d 196, 201 (4th Cir. 2006) (citing In re Application of Adams ex. rel. Naik v.

Naik, 363 F. Supp.2d 1025, 1030 (N.D. Ill. 2005); Wiggill v. Janicki, 262 F. Supp.2d 687, 689 (S.D. W.Va. 2003); Neng Nhia Yi Ly v. Heu, 296 F. Supp.2d 1009, 1011 (D. Minn. 2003); Teijeiro Fernandez v. Yeager, 121 F. Supp.2d 1118, 1125 (W.D. Mich. 2000); Bromley v. Bromley, 30 F.Supp.2d 857, 860–61 (E.D. Pa. 1998)). C.f. Ozaltin v. Ozaltin, 708 F.3d 355 (2d Cir. 2013). For this additional reason, the Court finds and concludes that denial of the petition for return is warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Respondent's Motion for Leave to File Amended Answer [38] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's First Amended Complaint for Return of Child [5] is **DENIED.**

A separate Judgment will accompany this Order.

Dated this 29th day of December, 2015.

                                        **JOHN A. ROSS**
                                        **UNITED STATES DISTRICT JUDGE**